


# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH DAKOTA

| | |
|---|---|
| JODY S. KNOX<br><br>Plaintiff,<br><br>vs.<br><br>HP ENTERPRISE SERVICES, LLC and HEWLETT-PACKARD COMPANY,<br><br>Defendants. | CASE: 12-4047<br><br>**VERIFIED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW Plaintiff Jody S. Knox and for her causes of action against Defendants HP Enterprise Services, LLC and Hewlett-Packard Company states and alleges as follows:

### PARTIES AND JURISDICTION

1. Plaintiff Jody Knox is an individual who is a resident of Sioux Falls, South Dakota.

2. Upon information and belief, Defendant HP Enterprise Services, LLC is a Delaware limited liability company registered to do business in the State of South Dakota with its primary place of business at 5400 Legacy Drive, Plano, Texas 75024.

3. Upon information and belief, Defendant Hewlett Packard Company is a Delaware corporation, registered to do business in South Dakota with its principal place of business at 3000 Hanover Street, Palo Alto, California 94304.

4. Upon information and belief HP Enterprise Services, LLC is a wholly-owned subsidiary of Hewlett-Packard Company.

1

5. Defendants HP Enterprise Services, LLC and Hewlett-Packard Company are employers as defined in 42 U.S.C. § 2000e(b) and are engaged in an industry affecting commerce.

6. This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

7. Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(b) and (c) as Defendants are registered to and do conduct business in South Dakota and a substantial part of the events and omissions which gave rise to this action occurred in this district as all times relevant to this action Plaintiff Jody Knox (hereinafter "Ms. Knox") was employed by Defendants in the State of South Dakota.

## SUBSTANTIVE FACTS AND ALLEGATIONS

8. In November 2006 Ms. Knox began employment with Saber Corporation as a project manager. Ms. Knox holds the Project Management Professional ("PMP") designation through the Project Management Institute.

9. The Saber Corporation was acquired by Electronic Data Systems Corporation in 2007. As of August 28, 2008, Electronic Data Systems Corporation became a wholly owned subsidiary of Hewlett-Packard Company and later changed its name to HP Enterprise Services, LLC. Defendants HP Enterprise Services, LLC and Hewlett-Packard Company are hereinafter collectively referred to "HP." At all times relevant to this action Ms. Knox was an employee of HP.

10. Ms. Knox was employed with HP as a Customer Project/Program Manager IV in HP's State and Local Government Division. Her duties included leading

project teams who were tasked with installing or maintaining information technology applications for state and local government agencies.

11. In 2007 through 2008 Ms. Knox reported to and was supervised by Michael Freese, (hereinafter "Mr. Freese") who upon information and belief, holds the title Senior Delivery Director. For a time in 2009 Ms. Knox reported to Mr. Arasu Dashkin (hereinafter "Mr. Dashkin").

12. Upon information and belief, in or about September 2009 Mr. Freese again became Ms. Knox's supervisor. Upon learning that Mr. Freese was again taking over direct supervision of the State and Local Government Division Ms. Knox contacted Mr. Freese to notify him that she was available for work. Mr. Freese did not assign Ms. Knox to a project.

13. On October 19, 2009, Ms. Knox was informed by Mr. Freese that she was being selected for Work Force Reduction ("WFR") due to the fact there were not any open positions in the State and Local Government Division.

14. Upon information and belief, at the time Ms. Knox was placed on WFR, however, there were two (2) open positions in the State and Local Government Division for which she was qualified. Despite this fact, she was placed on WFR.

15. Upon information and belief those two (2) positions in the State and Local Government Division were filled by two younger males.

16. Mr. Freese informed Ms. Knox that she could apply for open positions in other divisions of HP, which she did do. Mr. Freese also told Ms. Knox that she could not apply for any positions within the State and Local Government division now that he

3

was placing her on WFR. Ms. Knox was notified in early December 2009 that she had been selected for a new position within HP pending final approval.

17. On December 18, 2009, Ms. Knox was informed that her transfer to another division was not approved due to a low performance evaluation that was completed by Mr. Freese. This information was conveyed to Ms. Knox by a manager at HP who is a peer in the PMP community.

18. Upon information and belief the 2009 performance evaluation was submitted into HP's performance review system on or about November 4, 2009. Ms. Knox was not aware of this performance review or a previous review that had been completed by Mr. Freese in 2008.

19. HP's performance review procedure involves a several step process. Within this process the employee is to be notified of her review and provided the opportunity to respond. Upon information and belief, the manager must confirm multiple times prior to final submission that the employee has provided her comments.

20. Mr. Freese did not inform Ms. Knox of the 2008 or 2009 evaluations or provide her an opportunity to respond. Upon information and belief, HP's agents and employees did not follow HP's required written procedure in the completion of the performance appraisals in 2008 or 2009.

21. Mr. Freese included false statements in the 2009 performance review regarding Ms. Knox's performance on current and past projects. Ms. Knox has not been provided the 2008 review so it is unknown at this time if the information provided by Mr. Freese is accurate or not.

22. Mr. Freese stated in the 2009 performance review that Ms. Knox's performance was below expectations. This evaluation was based on Ms. Knox allegedly not bringing an internal project known as e-Tabs to a completion and causing the project to be abandoned. However, project was successfully brought to a completion and details regarding the completion were provided to HP's Human Resources Department prior to her termination.

23. Mr. Freese also stated in the 2009 performance review that Ms. Knox had struggled in two prior HP engagements (an ERS project and an unemployment insurance project) and had been removed from the engagements at the client's request. That statement is not accurate.

24. In early 2007 Ms. Knox took over an ERS project at Mr. Freese's request as the previous project manager was having significant difficulties. Ms. Knox was successful in getting the project back on track and was obtaining good results. However, several months after taking over the project Mr. Freese removed Ms. Knox. Mr. Freese informed Ms. Knox her removal was due to the fact that a young female HP employee was not happy with Ms. Knox. Mr. Freese stated to Ms. Knox that the employee had a "daddy syndrome" and felt that she "could get her way with father figures." Mr. Freese placed the same male manager that had previously been removed back into the position. He moved Ms. Knox into a clerk position on another project.

25. Ms. Knox was removed from her formal position ERS project due to her sex, and then placed in an inferior position in which her status and responsibilities were diminished. Despite being moved into another assignment she still was still contacted by the new project manager and Mr. Freese about and worked on the ERS project.

26. Ms. Knox was also transferred by Mr. Freese from an unemployment insurance project in 2007 and replaced by a less-qualified male employee.

27. Ms. Knox was not removed due to her poor performance. Any problems experienced on that project were due to the company's failure to be able to provide the client the unemployment insurance-specific expertise that had been promised to the client. That issue was beyond the scope of the project manger position.

28. In the 2009 performance evaluation Mr. Freese characterized these removals as being necessitated by Ms. Knox's poor performance and at the client's request. However, Ms. Knox had received bonuses stemming from these projects, and the client from the ERS project was used as a reference for Ms. Knox by HP for a proposal for a project in Denver.

29. Mr Freese continued his discriminatory activities by falsely characterizing the improper removals in Ms. Knox's performance evaluations. These discriminatory actions and false statements resulted in Ms. Knox being denied continued employment with HP.

30. Upon learning of the existence of the 2008 and 2009 performance appraisals Ms. Knox contacted Mr. Freese. At that time he told her the reviews "were what they were" and that "there was nothing more" that he could do and that "it's over" she should "move on."

31. Ms. Knox also contacted the HP Human Resources Department to address the issue. She was informed by the Department to submit a written rebuttal, which she did via email on January 15, 2010. Despite following HP's instructions and procedures with regards to reporting the improper and discriminatory activity by Mr. Freese to the

designated Human Resources representative she did not receive a response from HP, and her employment was terminated by HP on January 28, 2010.

32. Mr. Freese was a member of management when he engaged in improper conduct, including discrimination, and participated in the wrongful termination of Ms. Knox.

33. Ms. Knox filed a timely charge with the Equal Employment Opportunity Commission asserted claims based on sex and age. The EEOC issued a right to sue letter on December 16, 2011, a copy of which is attached hereto as Exhibit A. All conditions precedent to the initiation of this lawsuit have been fulfilled.

### COUNT I – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT ( 42 U.S.C. § 2000e, *et seq.)*

34. Plaintiff incorporates the allegations in paragraphs 1-33 as if fully set forth herein.

35. Defendant HP, through its agents and employees, engaged in a pattern of discriminatory conduct against Ms. Knox which culminated in the termination of Ms. Knox's employment on January, 28, 2010.

36. Ms. Knox's sex was a motivating factor in the adverse actions taken against her by HP and its management.

37. HP, its agents and employees knew that their actions were in violation of the law prohibiting sex discrimination or acted with reckless disregard of the law and indifference to Ms. Knox's rights.

38. The acts, omissions and behavior of HP constitute discrimination on the basis of sex in violation of Title VII, 42 U.S.C. §200e, *et seq.*

7

39. As a result of HP's unlawful acts Ms. Knox has suffered and will continue to suffer loss of earnings, employee benefits, mental anguish and suffering, embarrassment, and harm to her reputation and career in an amount to be determined at trial.

### COUNT II – VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT (29 U.S.C. § 631, *et seq.*)

40. Plaintiff incorporates the allegations set forth in paragraphs 1-39 as if fully set forth herein.

41. At all times relevant to this action Ms. Knox was more than 40 years of age.

42. HP, through its employees and agents, deliberately terminated Ms. Knox from employment and adversely affected Ms. Knox's status, responsibilities and effectiveness prior to her termination due to her age.

43. HP would not have placed Ms. Knox on Work Force Reduction or terminated her employment but for her age.

44. Ms. Knox was denied open positions within HP and ultimately terminated in knowing or reckless disregard of the requirements of the ADEA. Such violation was willful within the meaning of the ADEA, and entitles Ms. Knox to an award of liquidated damages.

45. Such actions constitute a violation of Age Discrimination in Employment Act and Ms. Knox is entitled to recover damages in an amount to be determined at trial.

## COUNT III – WRONGFUL TERMINATION

46. Plaintiff incorporates the allegations set forth in paragraphs 1-45 as if fully set forth herein.

47. HP's published written policies and procedures that governed the termination of employment through the Workforce Reduction Program and for alleged poor performance by an employee.

48. HP failed to follow these procedures resulting in the wrongful termination of Ms. Knox's employment without cause.

49. As a result of HP's wrongful termination of Ms. Knox's employment she has incurred damages in an amount to be established at trial.

## COUNT IV – BREACH OF CONTRACT

50. Plaintiff incorporates the allegations set forth in paragraphs 1- 49 as if fully set forth herein.

51. HP's published written policies and procedures that governed the performance appraisal process, appointments to positions, transfers within the company and the other terms and conditions of employment with HP.

52. These written procedures constituted a contract between HP and its employees.

53. HP breached the terms of its policies and procedures which ultimately resulted in Ms. Knox's wrongful termination.

54. As a result of HP's failure to follow its obligations Ms. Knox has incurred damages in an amount to be established at trial.

## COUNT IV- NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

55. Plaintiff incorporates the allegations set forth in paragraphs 1-51 as if fully set forth herein.

56. HP, through its employees and agents, engaged in negligent conduct towards Ms. Knox.

57. HP had a duty towards Ms. Knox to use reasonable care in carrying out the policies, procedures and conditions of her employment.

58. HP knew or should have known that its actions or inactions posed an unreasonable risk of emotional harm and distress that such distress, if it occurred, might result in psychological or bodily harm.

59. Ms. Knox, as a result of the negligent conduct by HP's agents and employees, suffered emotional distress and physical injuries.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this court grant judgment for Plaintiff Jody Knox against the Defendants:

1. Awarding the plaintiff compensatory damages including lost wages, retirement and other employee benefits which Plaintiff would have received to date and in the future had she not been discharged by HP;

2. Awarding the plaintiff damages for humiliation, pain and suffering and mental anguish;

3. Awarding liquidated damages for the willful violations of the Age Discrimination in Employment Act;

4. Awarding prejudgment interest on the damages;

5. Awarding the plaintiff punitive damages;

6. Awarding Ms. Knox her costs of this action, including reasonable attorney's fees; and

7.      Awarding Ms. Knox such other and further relief as the Court deems just and equitable.

## JURY TRIAL DEMANDED

Dated in Sioux Falls, South Dakota, this 16th day of March, 2012.

_____
Nichole Mohning Roths
Cutler & Donahoe, LLP
100 N. Phillips Avenue, 9th Floor
P.O. Box 1400
Sioux Falls, SD 57104-1400
Telephone: 605 335-4950
Facsimile: 605 335-4966
Attorney E-mail Address:
nicholer@cutlerlawfirm.com
Attorneys for Plaintiff Jody Knox

### VERIFICATION

STATE OF SOUTH DAKOTA  )
                                      : SS
COUNTY OF MINNEHAHA    )

Jody S. Knox, being first duly sworn, states and deposes that she has read the foregoing Verified Complaint and knows the contents thereof; that the same is true of her own knowledge except as to the matters therein stated on information and belief, and as to those matters that she believes it to be true.

Dated this 16 day of March 2012.

_____
Jody S. Knox

STATE OF SOUTH DAKOTA )
: SS
COUNTY OF MINNEHAHA )

On this, the __16th__ day of March, before me, the undersigned officer, personally appeared Jody Knox known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument, and acknowledged that she executed the same for the purposes therein contained.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

(SEAL)

_Lisa J King_
Notary Public
My Commission Expires: __8-19-17__